IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case No. _____ **02-23106**

**CIV-MOORE**

MAGISTRATE JUDGE
O'SULLIVAN

| | |
|---|---|
| INTERNATIONAL FIDELITY INSURANCE COMPANY | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| CRISAL CONSTRUCTION CO., INC. | )<br>)<br>)<br>) |
| Serve: J.A. DeArmas, Esquire<br>Registered Agent<br>255 University Avenue<br>Coral Gables, Florida 33143 | )<br>)<br>)<br>)<br>) |
| and | )<br>) |
| OVIDIO P. RODRIGUEZ<br>7101 S.W. 69th Avenue<br>Miami, FL 33143 | )<br>)<br>)<br>) |
| and | )<br>) |
| ALICIA MARTI RODRIGUEZ<br>7101 S.W. 69th Avenue<br>Miami, FL 33143 | )<br>)<br>)<br>) |
| and | )<br>) |
| WILLIAM D. REAL<br>5729 SW 71 Court<br>Miami, Florida 33143 | )<br>)<br>)<br>) |
| and | ) |

FILED BY
2002 OCT 21 PM 12:43
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.- MIA
D.C.

| | |
|---|---|
| CRISTINA M. REAL<br>5729 SW 71 Court<br>Miami, Florida 33143<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

**COMES NOW** the Plaintiff, International Fidelity Insurance Company ("IFIC"), by and through its undersigned counsel, and by way of Complaint against Defendants Crisal Construction Co., Inc., Ovidio P. Rodriguez, Alicia Marti Rodriguez, William D. Real, and Cristina M. Real states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity between the Plaintiff and each of the Defendants complained of herein, and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391. Some or all of the Defendants reside in this District.

### PARTIES

3. Plaintiff IFIC is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in Newark, New Jersey. IFIC is duly licensed, qualified, and authorized to engage in the business of issuing surety bonds in the State of Florida, as well as in other states.

4. Upon information and belief, Defendant Crisal Construction Co., Inc. ("Crisal") is a corporation organized and existing under the laws of the State of Florida, with its principal

place of business in Miami, Dade County, Florida.

5. Upon information and belief, Defendant Ovido P. Rodriguez is a citizen of the State of Florida currently residing at 7101 SW 69 Avenue, Miami, Florida 33143-3132.

6. Upon information and belief, Defendant Alicia M. Rodriguez is a citizen of the State of Florida currently residing at 7101 SW 69 Avenue, Miami, Florida 33143-3132.

7. Upon information and belief, Defendant William D. Real is a citizen of the State of Florida currently residing at 7120 SW 71 Ct., Miami, FL 33143-3046.

8. Upon information and belief, Defendant Cristina M. Real is a citizen of the State of Florida currently residing at 7120 SW 71 Ct., Miami, FL 33143-3046

## FACTS

9. Plaintiff IFIC restates and incorporates the allegations contained in Paragraphs 1 through 8 above as if fully set forth herein.

10. Defendant Crisal is an entity engaged in the business of construction contracting on public construction projects. Upon information and belief, on or about June 20, 2001, Crisal entered into a construction contract with The School Board of Miami-Dade County (hereinafter referred to as "Miami-Dade County Public Schools" or "MDCPS") for the project bearing Project no. A0654, Phillis Wheatley Elementary School, Additions and Renovations, hereinafter referred to as the "Project."

11. On or about June 26th 2001, IFIC, as surety, issued Public Construction Performance and Guarantee Bond (the "Performance Bond") and Public Construction Payment Bond (the "Payment Bond"), each bearing the Bond No. 0318012 (hereinafter collectively referred to as the "Bonds"), on behalf of Defendant Crisal, as principal, for the Project.

12. The Performance Bond names The School Board of Miami-Dade County, Florida as the Obligee and guaranteed Defendant Crisal's performance of its contractual obligations on the Project.

13. The Payment Bond guaranteed Defendant Crisal's payment to those providing Defendant Crisal with labor and/or materials for the Project.

14. In consideration of, and as an inducement for IFIC's issuance of the Bonds on behalf of Defendant Crisal, Defendant Crisal, as "Contractor," and Defendants Ovidio P. Rodriguez, Alicia M. Rodriguez, William D. Real, and Cristina M. Real, as "Indemnitors," executed an Agreement of Indemnity dated November 3, 2000, on behalf of IFIC, as "Surety." A true and exact copy of the Agreement of Indemnity is attached hereto as Exhibit A.

15. Pursuant to the Agreement of Indemnity, each of the Defendants agreed, among other things, to the following indemnity provision:

**INDEMNITY**

> SECOND: The Contractor [Crisal] and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety [IFIC] from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. Such payment shall be equal to the amount of the reserve set by Surety. In the event of any payment by the Surety the Contractor and Indemnitors further agree that in any accounting between the Surety and the Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements

   made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.

16.  IFIC has already received claims under the Public Construction Payment Bond that IFIC issued on behalf of Defendant Crisal in Crisal's role as Contractor and bond principal on the Project. Further, IFIC justifiably expects to receive numerous, additional claims in the future.

17.  Moreover, on or about September 13, 2002, The School Board sent notice to IFIC that it had terminated the construction contract with Crisal as a result of CCI's default under the terms of the contract and demanded IFIC perform under the Performance Bond.

18.  As a result of the claims asserted under the Bonds, and its enforcement of the Agreement of Indemnity against the Defendants, IFIC has already incurred losses, costs, and expenses, and will continue to incur losses, costs, and expenses, related to the Bonds issued on behalf Defendant Crisal.

19.  The losses, costs, and expenses incurred to date were reasonable, and were incurred under the good faith belief that it was necessary and expedient to make such disbursements.

20.  As a result of the realized and expected claims against the Bonds, IFIC has established reserves. The reserve amount takes into account Defendant Crisal's outstanding accounts payable on the Project, plus the cost to complete the Project, less any remaining funds in Defendant Crisal's contract on the Project.

21. IFIC's posting of these reserves is recorded in the financial records of IFIC the same as if IFIC has actually paid the full amount of the reserves. Accordingly, the reserves affect the ability of IFIC to issue bonds in the same manner as if a loss payment has actually been made.

22. Moreover, IFIC has already incurred attorney's fees and costs as a result of the aforementioned claims under the Bonds it issued on behalf of Defendant Crisal, and as a result of its enforcement of the Agreement of Indemnity against all of the Defendants.

23. IFIC has retained the services of the undersigned law firm to represent it in matters concerning the Bonds issued on behalf of Crisal and in this action, and has promised to pay said law firm reasonable attorneys' fees and costs, for which the Defendants are liable in accordance with the Agreement of Indemnity.

## COUNT I
### (Specific Performance of the Collateral Security and Exoneration Provisions of the Agreement of Indemnity)

24. Plaintiff IFIC restates and incorporates the allegations contained in Paragraphs 1 through 23 above as if fully set forth herein.

25. The claims received by IFIC against the Bonds issued on behalf of Defendant Crisal constitute assertions of liability against the Surety, IFIC.

26. By letter of October 3, 2002, IFIC informed Defendants Crisal, Ovidio P. Rodriguez, Alicia Marti Rodriguez, William D. Real, and Cristina M. Real that IFIC had received claims under the Bonds. With that letter, IFIC made formal demand upon the Defendants to place IFIC in funds equal to the reserves set by IFIC as required by the Agreement of Indemnity.

27. Pursuant to the Agreement of Indemnity, and in particular the indemnity provision

referenced in Paragraph 15 above, the Defendants are contractually bound and obligated to place the Surety in funds, property, or other security in the amount of the reserves set by the Surety.

28. The Defendants have failed to comply with IFIC's demand to be placed in funds equal to the amount of the reserves set by IFIC, and therefore have breached their obligations under the Agreement of Indemnity.

## COUNT II
### (Exoneration and Quia Timet Relief)

29. Plaintiff IFIC hereby restates and incorporates the allegations contained in Paragraphs 1 through 23 above as if fully set forth herein.

30. Defendants Crisal, Ovidio P. Rodriguez, Alicia Marti Rodriguez, William D. Real, and Cristina M. Real have ignored and refused to meet their obligations under the Agreement of Indemnity.

31. By reason of the Defendants' failure to comply with the terms of the Agreement if Indemnity, IFIC has been denied and deprived of the benefit of the security that the Defendants agreed to provide.

32. IFIC justifiably fears that it will suffer future losses by virtue of its role as surety to Defendant Crisal, which cannot be avoided or remedied by a present action at law. Unless certain equitable relief is granted to IFIC, IFIC will not be adequately secured under the Bonds it issued on behalf of Defendant Crisal.

33. By virtue of the equitable doctrines of exoneration and quia timet, IFIC is entitled to certain equitable protection as surety for Defendant Crisal, including, but not limited to, being fully collateralized for any and all demands under the Bonds, and being fully collateralized for

any and all losses, costs, and attorneys' fees associated therewith.

## COUNT III
### (Indemnification)

34. Plaintiff IFIC hereby restates and incorporates the allegations contained in Paragraphs 1 through 23 above as if fully set forth herein.

35. IFIC has incurred losses, costs, and attorney's fees as a result of having issued the Bonds on behalf of Defendant Crisal, as well as in its efforts to enforce the covenants and conditions of the Agreement of Indemnity against all of the Defendants herein.

36. IFIC will continue to incur losses, costs, and attorneys' fees as a result of having issued the Bonds on behalf of Defendant Crisal, and in enforcing the covenants and conditions of the Agreement of Indemnity against all of the Defendants herein.

37. By the terms of the Agreement of Indemnity, and in particular the indemnity provision referenced in Paragraph 15 above and its common law right to indemnity, IFIC is entitled to be indemnified by the Defendants for all losses, costs, and attorney's fees it has incurred or will incur as a result of having issued the Bonds on behalf of Defendant Crisal and as a result of enforcing the covenants and conditions of the Agreement of Indemnity.

35. Defendants Crisal, Ovidio P. Rodriguez, Alicia Marti Rodriguez, William D. Real, and Cristina M. Real have failed to exonerate, indemnify, and keep indemnified IFIC for the losses, costs, and attorneys' fees incurred, and to be incurred, by IFIC as a result of having issued the Bonds on behalf of Defendant Crisal, and in enforcing the covenants and conditions of the Agreement of Indemnity. The Defendants' failure to exonerate, indemnify, and keep indemnified IFIC constitutes a breach of the Agreement of Indemnity. As a consequence of the

Defendants' breach of the Agreement of Indemnity, IFIC has suffered damages and will continue to suffer damages.

**WHEREFORE**, Plaintiff International Fidelity Insurance Company prays that this Honorable Court issue an Order and grant Judgment as follows:

1) An Order requiring Defendants Crisal, Ovidio P. Rodriguez, Alicia Marti Rodriguez, William D. Real, and Cristina M. Real, jointly and severally, to place IFIC in funds, property and/or other security, equal in value to the reserve set by the surety, or as determined by IFIC to be ample security for its obligations under the payment and performance bonds issued on behalf of Defendant Crisal.

2) An Order enjoining and restraining Defendants Crisal, Ovidio P. Rodriguez, Alicia Marti Rodriguez, William D. Real, and Cristina M. Real, from selling, transferring, dissipating, encumbering or otherwise disposing of their assets and property, whether held jointly or in common with others, unless and until IFIC shall be placed in funds as required under the Agreement of Indemnity, and as prayed for herein above.

3) An Order enjoining and restraining Defendants Crisal, Ovidio P. Rodriguez, Alicia Marti Rodriguez, William D. Real, and Cristina M. Real, from allowing their assets or property to be encumbered, unless and until IFIC shall be placed in funds as required under the Agreement of Indemnity, and as prayed for herein above.

4) An Order granting IFIC a lien upon all assets and property, including realty, personalty and mixed property, owned by Defendants Crisal, Ovidio P. Rodriguez, Alicia Marti Rodriguez, William D. Real, and Cristina M. Real, and in which any of the Defendants, individually or otherwise, have an interest, unless and until IFIC shall be placed in funds as required by the

Agreement of Indemnity, and as prayed for herein above.

5) An Order requiring Defendants Crisal, Ovidio P. Rodriguez, Alicia Marti Rodriguez, William D. Real, and Cristina M. Real, jointly and severally, to indemnify and exonerate IFIC for all liabilities, losses, and expenses and attorney's fees incurred by IFIC, or which IFIC shall incur, as a result of having issued payment and performance bonds on behalf of Defendant Crisal, and incurred in enforcing the covenants and conditions of the Agreement of Indemnity.

6) Judgment in an amount equal to the amount of losses, costs and attorney's fees incurred by IFIC as a result of having issued payment and performance bonds on behalf of Defendant Crisal, and incurred in enforcing the covenants and conditions of the Agreement of Indemnity all the above-named Defendants.

7) Judgment awarding IFIC reimbursement for its losses, costs, expenses, and attorney's fees incurred herein, and awarding all interest to which it is entitled.

8) An award of such other and further relief as this Court may deem just and proper.

Dated: 10/17/02

Respectfully submitted,

Neil L. Henrichsen
Fla. Bar No. 0111503
Helen H. Albee
Fla. Bar No. 0987247
Henrichsen Siegel Moore, PLLC
200 East Forsyth Street
Jacksonville, FL 32202
(904) 355-2233
(904) 596-5705 (fax)
Nhenrichsen@hslawyers.com

10

# EXHIBIT A

# AGREEMENT OF INDEMNITY

THIS AGREEMENT of Indemnity, made and entered into this 3rd day of November 2000 by **Crisal Construction Company Inc.** 4661 S W 71ˢᵗ Avenue, Miami, Florida 33155 (hereinafter called the Contractor) Crisal Construction Company Inc. and Alicia Marti Rodriguez and Ovidio P. Rodriguez, 7101 S W 69 Avenue, Miami, Florida 33143 and William D. Real and Cristina M. Real, 5729 S W 55ᵗʰ Street, Miami, Florida 33155 (hereinafter called the Indemnitors, if any) and INTERNATIONAL FIDELITY INSURANCE COMPANY, One Newark Center, 20ᵗʰ Floor, Newark, New Jersey 07102 (hereinafter called Surety),

## WITNESSETH:

WHEREAS, the Contractor, in the performance of contracts and the fulfillment of obligations generally, whether in its own name solely or as co-adventurer with others, may desire, or be required to give or procure certain surety bonds, undertakings or instruments of guarantee, and to renew, or continue or substitute the same from time to time; or new bonds, undertakings or instruments of guarantee with the same or different penalties, and/or conditions, may be desired or required, in renewal, continuation, extension or substitution thereof; any one or more of which are hereinafter called Bonds; or the Contractor or Indemnitors may request the Surety to refrain from canceling said Bonds; and

WHEREAS, at the request of the Contractor and the Indemnitors and upon the express understanding that this Agreement of Indemnity should be given, the Surety has executed or procured to be executed, and may from time to time hereafter execute or procure to be executed, said Bonds on behalf of the Contractor; and

WHEREAS, the Underwriters have a substantial, material and beneficial interest in the obtaining of the Bonds or in the Surety's refraining from canceling said Bonds.

NOW, THEREFORE, in consideration of the premises the Contractor and Indemnitors for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, hereby covenant and agree with the Surety, its successors and assigns, as follows:

## PREMIUMS

FIRST: The Contractor and Indemnitors will pay to the Surety in such manner as may be agreed upon all premiums and charges of the Surety for the Bonds in accordance with its rate filings, its manual of rates, or as otherwise agreed upon, until the Contractor or Indemnitors shall serve evidence satisfactory to the Surety of its discharge or release from the Bonds and all liability by reason thereof.

## INDEMNITY

SECOND: The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. Such payment shall be equal to the amount of the reserve set by the Surety. In the event of any payment by the Surety the Contractor

and Indemnitors further agree that in any accounting between the Surety and the Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.

## ASSIGNMENT

THIRD:    The Contractor, the Indemnitors hereby consenting, will assign, transfer and set over, and does hereby assign, transfer and set over to the Surety, as collateral, to secure the obligations in any and all of the paragraphs of this Agreement and any other indebtedness and liabilities of the Contractor to the Surety, whether heretofore or hereafter incurred, the assignment in the case of each contract to become effective as of the date of the bond covering such contract, but only in the event of (1) any abandonment, forfeiture or breach of any contracts referred to in the Bonds or of any breach of any said Bonds- or (2) of any breach of the provisions of any of the paragraphs of this Agreement; or (3) of a default in discharging such other indebtedness or liabilities when due; or (4) of any assignment by the Contractor for the benefit of creditors' or of the appointment, or of any application for the appointment, of a receiver or trustee for the Contractor whether insolvent or not; or (5) of any proceeding which deprives the Contractor of the use of any of the machinery, equipment, plant, tools or material referred to in section (b) of this paragraph; or (6) of the Contractor's dying, absconding, disappearing, incompetency, being convicted of a felony, or imprisoned if the Contractor be an individual- (a) All the rights of the Contractor in, and growing in any manner out of, all contracts referred to in the Bonds, or in, or growing in any manner out of the Bonds: (b) All the rights, title and interest of the Contractor in and to all machinery, equipment, plant, tools and materials which are now, or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all contracts referred to in the bonds, materials which may be in process of construction, in storage elsewhere, or in transportation to any and all of said sites; (c) All the rights, title and interest of the Contractor in and to all subcontracts let or to be let in connection with any and all contracts referred to in the Bonds, and in and to all surety bonds supporting such subcontracts; (d) All actions, causes of actions, claims and demands whatsoever which the Contractor m3y have or acquire against any subcontractor, laborer or materialman, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or on account of any and all contracts referred to in the Bonds; and against any surety or sureties of any subcontractor, laborer, or materialman; (e) Any and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds and all other contracts whether bonded or not in which the Contractor has an interest.

## TRUST FUND

FOURTH:    If any of the Bonds are executed in connection with a contract which by its terms or by law prohibits the assignment of the contract price, or any part thereof, the Contractor and Indemnitors covenant and agree that all payments received for or on account of said contract shall be held as a trust fund in which the Surety has an interest, for the payment of obligations incurred in the performance of the contract and for labor, materials, and services furnished in the prosecution of the work provided in said contract or any authorized extension or modification thereof; and, further, it is expressly understood and declared that all monies due and to become due under any contract or contracts covered by the Bonds are trust funds, whether in the possession of the Contractor or Indemnitors or otherwise, for the benefit of and for payment of all such obligations in connection with any such contract or contracts for which the Surety would be liable under any of said Bonds, which said trust also inures to

the benefit of the Surety for any liability or loss it may have or sustain under any said Bonds, and this Agreement and declaration shall also constitute notice of such trust.

## UNIFORM COMMERCIAL CODE

FIFTH: That this Agreement shall constitute a Security Agreement to the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement or under law, or in equity.

## TAKEOVER

SIXTH: In the event of any breach, delay or default asserted by the obligee in any said Bonds, or the Contractor has suspended or ceased work on any contract or contracts covered by any said Bonds, or failed to pay obligations incurred in connection therewith, or in the event of the death, disappearance, Contractor's conviction for a felony, imprisonment, incompetency, insolvency, or bankruptcy of the Contractor, or the appointment of a receiver or trustee for the Contractor, or the property of the Contractor, or in the event of an assignment for the benefit of creditors of the Contractor, or if any action is taken by or against the Contractor under or by virtue of the National Bankruptcy Act, or should reorganization or arrangement proceedings be filed by or against the Contractor under said Act, or if any action is taken by or against the Contractor under the insolvency laws of any state, possession, or territory of the United States the Surety shall have the right, at its option and in its sole discretion and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of the Contractor and Indemnitors to complete or arrange for the completion of the same, and the Contractor and Indemnitors shall promptly upon demand pay to the Surety all losses, and expenses so incurred.

## CHANGES

SEVENTH: The Surety is authorized and empowered, without notice to or knowledge of the Indemnitors to assent to any change whatsoever in the Bonds, and/or any contracts referred to in the Bonds, and/or in the general conditions, plans and/or specifications accompanying said contracts, including, but not limited to, any change in the time for the completion of said contracts and to payments or advances thereunder before the same may be due, and to assent to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions or renewals of the Bonds and to execute any substitute or substitutes therefor, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, it being expressly understood and agreed that the Indemnitors shall remain bound under the terms of this Agreement even though any such assent by the Surety does or might substantially increase the liability of said Indemnitors.

## ADVANCES

EIGHTH: The Surety is authorized and empowered to guarantee loans, to advance or lend to the Contractor any money, which the Surety may see fit, for the purpose of any contracts referred to in, or guaranteed by the Bonds; and all money expended in the completion of any such contracts by the Surety, or lent or advanced from time to time to the Contractor, or guaranteed by the Surety for the purposes of any such contracts, and all costs, and expenses incurred by the Surety in relation thereto, unless repaid with legal interest by the Contractor to the Surety when due, shall be presumed to be a loss by the Surety for which the Contractor and the Indemnitors shall be responsible, notwithstanding that said money or any part thereof should not be so used by the Contractor.

## BOOKS AND RECORDS

NINTH: At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Contractor and Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the status of the work under contracts being performed by the Contractor, the condition of the performance of such contracts and payments of accounts.

## DECLINE EXECUTION

TENTH: Unless otherwise specifically agreed in writing, the Surety may decline to execute any Bond and the Contractor and Indemnitors agree to make no claim to the contrary in consideration of the Surety's receiving this Agreement; and if the Surety shall execute a Bid or Proposal Bond, it shall have the right to decline to execute any and all of the bonds that may be required in connection with any award that may be made under the proposal for which the Bid or Proposal Bond is given and such declination shall not diminish or alter the liability that may arise by reason of having executed the Bid or Proposal Bond.

## NOTICE OF EXECUTION

ELEVENTH: The Indemnitors hereby waive notice of the execution of said Bonds and of the acceptance of this Agreement, and the Contractor and the Indemnitors hereby waive all notice of any default, or any other act or acts giving rise to any claim under said Bonds, as well as notice of any and all liability of the Surety under said Bonds, and any and all liability on their part hereunder, to the end and effect that, the Contractor and the Indemnitors shall be and continue liable hereunder, notwithstanding any notice of any kind to which they might have been or be entitled, and notwithstanding any defenses they might have been entitled to make.

## SETTLEMENTS

TWELFTH: The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, unless the Contractor and the Indemnitors shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety.

## SURETIES

THIRTEENTH: In the event the Surety procures the execution of the Bonds by other sureties, or executes the Bonds with co-sureties, or reinsures any portion of said Bonds with reinsuring sureties, then all the terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsuring sureties, as their interests may appear.

## SUITS

FOURTEENTH: Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising.

## OTHER INDEMNITY

FIFTEENTH: That the Contractor and the Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of the Contractor and the Indemnitors, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of said Bonds, from the Contractor or Indemnitors or others, it being expressly understood and agreed by the Contractor and the Indemnitors that any and all other rights which the Surety may have or acquire against the Contractor and the Indemnitors and/or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement.

## INVALIDITY

SIXTEENTH: In case any of the parties mentioned in this Agreement fail to execute the same, or in case the execution hereof by any of the parties be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the parties executing the same, but each and every party so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed. It is understood and agreed by the Contractor and Indemnitors that the rights, powers, and remedies given the Surety under this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Contractor and Indemnitors or others whether by the terms of any other agreement or by operation of law or otherwise.

## ATTORNEY IN FACT

SEVENTEENTH: The Contractor and Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the Contractor and Indemnitors assigned, transferred and set over to the Surety in this Agreement, and in the name of the Contractor and Indemnitors to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Contractor and Indemnitors hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact.

## TERMINATION

EIGHTEENTH: This Agreement may be terminated by the Contractor or Indemnitors upon twenty days' written notice sent by registered mail to the Surety at its home office at One Newark Center, Newark, New Jersey 07102, but any such notice of termination shall not operate to modify, bar, or discharge the Contractor or the Indemnitors as to the Bonds that may have been theretofore executed.

NINETEENTH: This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed to form a part hereof.

IN WITNESS WHEREOF, we have hereunto set our hands and seals the day and year first above written.

ATTEST OR WITNESS:   Crisal Construction Company Inc.
4661 S W 71st Avenue
Miami, Florida  33155

65-0566977 Federal Tax I.D. Number

..✓............................  By .....Ali. Walking.................... (SEAL)
(Signature of Corporate President)
Alicia Marti Rodriguez, President

..✓............................  By .....Ali. Walking.................... (SEAL)
(Signature of Indemnitor)

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 Social Security Number

Alicia Marti Rodriguez, 7401 S W 69th Avenue, Miami, Florida  33143

..✓............................  By ........................................... (SEAL)
(Signature of Indemnitor)

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 Social Security Number

Ovidio P. Rodriguez, 7401 S W 69th Avenue, Miami, Florida  33143

..✓............................  By ........................................... (SEAL)
(Signature of Indemnitor)

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 Social Security Number

William D. Real, 5729 S W 55th Street, Miami, Florida  33155

..✓............................  By ....Cristina M. Repujikial........... (SEAL)
(Signature of Indemnitor)

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 Social Security Number

Cristina M. Real, 5729 S W 55th Street, Miami, Florida, 33155

INTERNATIONAL FIDELITY INSURANCE COMPANY
(SURETY)

..PJWilk................................   By.Ronald C. Opferman...(SEAL)
Ronald C. Opferman, Attorney In Fact

## For Acknowledgment of Contractor's Signature

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF ..Florida..............

COUNTY OF ..Miami-Dade.......... } ss:

On this ......3rd...... day of ......November...... in the year ~~19~~ 2000 before me personally comes(s) Alicia M. Rodriguez; Ovidio P. Rodriguez; William D. Real; Cristina M. Real to me known and known to me to be the person(s) who (is) (are) described in and who executed the foregoing instrument and acknowledge(s) to me that ...the.y.. executed the same.

................................................
(Signature and title of official taking acknowledgement/ Notary)

OFFICIAL NOTARY SEAL
GISEL M GONZALEZ
COMMISSION NUMBER
CC908936
MY COMMISSION EXPIRES
FEB. 8, 2004

### CORPORATE ACKNOWLEDGMENT

STATE OF ..Florida..............

COUNTY OF ..Miami-Dade.......... } ss:

On this ......3rd...... day of ......November...... in the year ~~19~~ 2000 before me personally comes(s) Alicia M. Rodriguez to me known who, being by me duly sworn, deposes and says that he resides in the City of ...Miami........ that he is the ...President........ of the ..Crisal Construction Co., Inc. the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal, that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

................................................
(Signature and title of official taking acknowledgement/ Notary)

OFFICIAL NOTARY SEAL
GISEL M GONZALEZ
COMMISSION NUMBER
CC908936
MY COMMISSION EXPIRES
FEB. 8, 2004

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF ..............................

COUNTY OF ........................... } ss:

On this ............... day of ........................., in the year 19......... before me personally come(s)
....................................................................................................................
to me known and known to me to be the person(s) who (is) (are) described in and who executed the foregoing instrument and acknowledge(s) to me that .....he... executed the same.

................................................
(Signature and title of official taking acknowledgment/ Notary)

Form 184

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**02-23106**
**CIV-MOORE**
**MAGISTRATE JUDGE O'SULLIVAN**

## I.(a) PLAINTIFFS
International Fidelity Insurance Company, a Foreign Corporation

## DEFENDANTS
Crisal Construction Company, Inc., Ovidio P. Rodriguez, Alicia Marti Rodriguez, William D. Real, and Cristina M. Real

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

02 cv 23106 Moore/O'Sullivan

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Henrichsen Siegel Moore
200 East Forsyth Street
Jacksonville, Florida 32202
(904) 355-2233

**ATTORNEYS (IF KNOWN)**

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)
- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only) (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / **HABEAS CORPUS:** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights / ☐ 540 Mandamus & Other | | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Action on Agreement of Indemnity for Legal and Equitable Relief
28 USC SECT. 1332(1)(1)

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☒ NO

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE 10/17/02

SIGNATURE OF ATTORNEY OF RECORD
(Helen H. Albee, Esq.)

$150.00  871217
10/21/02

**FOR OFFICE USE ONLY**
RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____